# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

)
MERCY GENERAL HOSPITAL, <u>et al.</u>,   )
                               )
        Plaintiffs,            )
                               )
        v.                   )       Civil Action No. 16-99 (RBW)
                               )
ALEX M. AZAR II, in his official capacity   )
as Secretary of the United States        )
Department of Health and Human Services,   )
                               )
        Defendant.          )

_____ )

## <u>MEMORANDUM OPINION</u>

       The plaintiffs, eighty-one acute care hospitals located in California, seek judicial review of the final decision of the defendant, the Secretary of the United States Department of Health and Human Services (the "Secretary"), denying their claims for reimbursement of deductible and coinsurance payments that were not paid to the hospitals by Medicare beneficiaries. <u>See</u> Complaint ("Compl.") ¶¶ 1–2. Currently before the Court is the Plaintiffs' Motion for Reconsideration and Renewal of Motion for Summary Judgment and Objections; or, in the Alternative, Motion for Scheduling Order and Retention of Jurisdiction ("Pls.' Mot." or the "motion for reconsideration"), which seeks, <u>inter alia</u>, reconsideration of the Court's prior decision issued on September 29, 2018 (the "September 29, 2018 decision") pursuant to Federal Rule of Civil Procedure 59(e), or alternatively, pursuant to Rule 60(b). <u>See</u> Pls.' Mot. at 2. Upon consideration of the parties' submissions,[1] the Court concludes that it must grant in part and deny in part the plaintiffs' motion for reconsideration.

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its decision: (1) the Defendant's Response to Plaintiffs' Motion for Reconsideration and Renewal of Motion for

(continued . . .)

# I.      BACKGROUND

The Court previously described the relevant statutory and regulatory framework and factual background in detail, see Mercy Gen. Hosp. v. Azar, 344 F. Supp. 3d 321, 326–33 (D.D.C. 2018) (Walton, J.), and therefore will not reiterate these topics in full again.

The Court will, however, discuss the procedural posture pertinent to the resolution of the pending motion. As the Court previously explained, see id. at 328, if Medicare patients fail to pay the deductible and coinsurance payments that they owe to providers, the providers may seek reimbursement from the Centers for Medicare & Medicaid Services ("CMS") for these unpaid amounts, known as "bad debts," see 42 C.F.R. § 413.89(e). To obtain reimbursement for these bad debts, providers must demonstrate that the debt satisfies four criteria:

(1)      The debt must be related to covered services and derived from deductible and coinsurance amounts.

(2)      The provider must be able to establish that reasonable collection efforts were made.

(3)      The debt was actually uncollectible when claimed as worthless.

(4)      Sound business judgment established that there was no likelihood of recovery at any time in the future.

Id. Chapter 3 of CMS's Provider Reimbursement Manual ("PRM") provides further instruction regarding the requirements for bad debt reimbursement.

---

(. . . continued)
Summary Judgment and Objections; or, in the Alternative, Motion for Scheduling Order and Retention of Jurisdiction ("Def.'s Opp'n") (2) the Plaintiffs' Reply in Support of Plaintiffs' Motion for Reconsideration and Renewal of Motion for Summary Judgment and Objections; or, in the alternative, Motion for Scheduling Order and Retention of Jurisdiction ("Pls.' Reply"); (3) the Objections to the Magistrate Judge's Proposed Findings and Recommendations ("Pls.' Objs."); (4) the Reply in Support of Objections to the Magistrate Judge's Proposed Findings and Recommendations ("Pls.' Reply Objs."); (5) the Written Response to the Court's Queries Pursuant to February 16, 2018 Order ("Pls.' Resp."); (6) the Plaintiffs' Memorandum of Points and Authorities in Support of Motion for Summary Judgment ("Pls.' Summ. J. Mem."); (7) the Notice and Clarification ("Pls.' Not."); and (8) the Administrative Record ("AR").

Here,

the [CMS] Administrator [(the "Administrator")] denied the plaintiffs' claims for Medicare reimbursement of unpaid deductibles and coinsurance pursuant to the Secretary's "must-bill policy," which requires providers seeking Medicare reimbursement for bad debts associated with dual eligible[] [patients][2] to (1) bill the state Medicaid program (the "billing requirement") and (2) obtain and submit to the [Medicare] intermediary [(the "intermediary")] a remittance advice from the state Medicaid program (the "remittance advice requirement").[3]   The Administrator denied the plaintiffs' claims for failing to satisfy the remittance advice requirement.  In opposition to this conclusion, the plaintiffs argue[d] that (1) "[t]he Secretary's purported must-bill policy . . . was not in place prior to August 1, 1987, and therefore violates the [Bad Debt] Moratorium," [(the "Moratorium")][4] or, alternatively, even if the must-bill policy is lawful; (2) "the Secretary should be ordered to accept the alternative documentation the [p]laintiffs submitted" under "PRM [§] 1102.3L, which clearly provided that providers could submit proper alternative documentation in lieu of billing the State[] . . . and which was applicable to the [p]laintiffs' cost years at issue"; and (3) the plaintiffs' "EDS[5] [reports] were the equivalent of remittance advices from the State, and[, therefore,] rejecting them was improper,"

---

[2] As the Court previously explained, see Mercy Gen. Hosp., 344 F. Supp. 3d at 327–28, dual eligible patients are patients that "are eligible for both Medicare and Medicaid."  Grossmont Hosp. Corp. v. Burwell, 797 F.3d 1079, 1081 (D.C. Cir. 2015).  Although "Medicare is the primary payor" in this situation, "[s]tate Medicaid plans often mandate that the state Medicaid agency pay for part or all of the Medicare deductibles and coinsurance amounts incurred in connection with treating these dual eligible[] [patients]."  Id.

[3] As the Court previously noted in its September 29, 2018 decision, see Mercy Gen. Hosp., 344 F. Supp. 3d at 335 n.9, the Administrator's description of the must-bill policy as having two components is consistent with the Secretary's description of the policy expressed in Grossmont Hospital Corp.  See 797 F.3d at 1082 (describing the Secretary's policy as requiring a hospital to "bill[] the state Medicaid agency ('must[-]bill policy') and obtain[] a determination from the state of its payment responsibility ('mandatory state determination')").

[4] The Bad Debt Moratorium provided:

> In making payments to hospitals under [the Medicare program], the Secretary . . . shall not make any change in the policy in effect on August 1, 1987, with respect to payment under [the Medicare program] to providers of service for reasonable costs relating to unrecovered costs associated with unpaid deductible and coinsurance amounts incurred under [the Medicare program] (including criteria for what constitutes a reasonable collection effort).

Omnibus Budget Reconciliation Act (OBRA) of 1987, Pub. L. No. 100–203, § 4008(c), 101 Stat. 1330, 1330–55 (codified at 42 U.S.C. § 1395f note (Continuation of Bad Debt Recognition for Hospital Services)).

[5] As the Court previously explained, see Mercy Gen. Hosp., 344 F. Supp. 3d at 331, the plaintiffs represent that they contracted with EDS Corporation ("EDS") in 2007 "to produce reports to submit . . . [to the intermediary] as [ ] alternative documentation to the State remittance advices" (the "EDS reports").  AR at 12–13; see also AR at 34 (explaining that the plaintiffs retained EDS "in order to . . . generate certain reports 'for the purposes of identifying outpatient and inpatient bad debt payable by the Medicare program'").

Mercy Gen. Hosp., 344 F. Supp. 3d at 335 (tenth, fourteenth through seventeenth, nineteenth, and twentieth alterations in original) (citations omitted).

The Court, in its September 29, 2018 decision, partially granted the plaintiffs' summary judgment motion and

> conclude[d] that the Administrator's finding that the Secretary's remittance advice requirement predated the Moratorium [was] not supported by substantial evidence, and thus, based on the administrative record before the Secretary, application of such a requirement to the plaintiffs' claims violated the Moratorium. Therefore, the Court [could not] affirm the Secretary's denial of the plaintiffs' claims on the basis that the plaintiffs failed to provide remittance advices to support their claims. Moreover, because the Administrator did not find that the plaintiffs failed to bill the state for all of the claims at issue, the Court [could not] affirm the Administrator's decision denying all of the plaintiffs' claims on the alternative ground that the plaintiffs failed to satisfy any billing requirement.

Id. at 354. Accordingly, the Court vacated the Administrator's decision and remanded the case to the Secretary for further proceedings. See Order at 1 (Sept. 29, 2018), ECF No. 49.

Thereafter, on October 25, 2018, the plaintiffs filed their motion for reconsideration of the Court's September 29, 2018 decision, see Pl.'s Mot. at 1, which is the subject of this Memorandum Opinion.

## II.        STANDARDS OF REVIEW

### A.        Rule 59(e) Motion for Reconsideration

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "[twenty-eight] days after the entry of the judgment." Fed. R. Civ. P. 59(e). "Motions to alter or amend a judgment under Federal Rule of Civil Procedure 59(e) lie within the discretion of the Court." AARP v. U.S. Equal Emp't Opportunity Comm'n, 292 F. Supp. 3d 238, 241 (D.D.C. 2017) (citing Ciralsky v. Cent. Intelligence Agency, 355 F.3d 661, 671 (D.C. Cir. 2004)). However, motions under Rule 59(e) are "disfavored," and the moving party bears the burden of establishing "extraordinary circumstances" warranting relief from a final

judgment.  E.g., Niedermeier v. Office of Baucus, 153 F. Supp. 2d 23, 28 (D.D.C. 2001) (citing

Anyanwutaku v. Moore, 151 F.3d 1053, 1057 (D.C. Cir. 1998)).  "Rule 59(e) motions need not

be granted unless the district court finds that there is an intervening change of controlling law,

the availability of new evidence, or the need to correct a clear error or prevent manifest

injustice."  Anyanwutaku, 151 F.3d at 1057–58 (citation and internal quotation marks omitted).

**B.      Rule 60(b) Motion for Reconsideration**

Rule 60(b) provides that "'upon such terms as are just, the [C]ourt may relieve a party . . .

from a final judgment, order, or proceeding' for any of several specified reasons."  Twelve John

Does v. District of Columbia, 841 F.2d 1133, 1138 (D.C. Cir. 1988) (quoting Fed. R. Civ. P.

60(b)).  Clause (b)(6) of Rule 60 "grants federal courts broad authority to relieve a party from a

final judgment 'upon such terms as are just,' provided that the motion is made within a

reasonable time and is not premised on one of the grounds for relief enumerated in clauses (b)(1)

through (b)(5)" of the Rule.  Salazar ex rel. Salazar v. District of Columbia, 633 F.3d 1110, 1116

(D.C. Cir. 2011) (quoting Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863

(1988)); see Fed. R. Civ. P. 60(b)(6) (permitting courts to "relieve a party . . . from a final

judgment, order, or proceeding" for "any other reason that justifies relief").  "The Rule does not

particularize the factors that justify relief, but . . . provides courts with authority 'adequate to

enable them to vacate judgments whenever such action is appropriate to accomplish justice.'"

Liljeberg, 486 U.S. at 863–64 (quoting Klapprott v. United States, 335 U.S. 601, 614–15

(1949)).  Although the Court "enjoys a large measure of discretion in deciding whether to grant

or deny a [Rule] 60(b)[(6)] motion," Randall v. Merrill Lynch, 820 F.2d 1317, 1320 (D.C. Cir.

1987), the Supreme Court has held that Rule 60(b)(6) applies only in "extraordinary

circumstances," Ackermann v. United States, 340 U.S. 193, 202 (1950), and "this [Circuit] has

cautioned that Rule 60(b)(6) 'should be only sparingly used,'" <u>Twelve John Does</u>, 841 F.2d

at 1140 (quoting <u>Good Luck Nursing Home. Inc. v. Harris</u>, 636 F.2d 572, 577 (D.C. Cir. 1980)).

### III.    ANALYSIS

### A.    Whether Reconsideration is Appropriate

The plaintiffs argue that reconsideration of the Court's September 29, 2018 decision and

Order pursuant to Rule 59(e) is necessary "to correct a clear error or prevent manifest injustice,"

Pls.' Mot. at 9 (internal quotation marks omitted), "because the [decision] awards summary

judgment to [the] [p]laintiffs with too limited a touch," <u>id.</u> at 1.  Specifically, they argue that "the

Court's analysis that the remittance advice component of the must bill policy violates the

Moratorium applies equally to the billing component," <u>id.</u> at 9, and thus, the Court committed

clear error "by effectively find[ing] [that the] [p]laintiffs are entitled to relief from [both

components of] the must bill policy . . . but only grant[ing] relief as to the remittance advice

requirement," <u>id.</u> at 8.  The plaintiffs further argue that the Court's narrow ruling is "manifestly

unfair" because "the [p]laintiffs likely will have to wait several more years for the [ ]

Administrator either to recognize that the must bill component is meaningless without the

remittance advice requirement or to deny reimbursement simply on the basis that the [p]laintiffs

did not bill the State and force the [p]laintiffs to then seek judicial review of the Moratorium

issue again." <u>Id.</u> at 10.  The plaintiffs further argue that the Court erred because it "did not rule

on whether . . . []PRM[] [§] 1102.3L applied to [the] [p]laintiffs . . . [or] whether the EDS reports

submitted by [the] [p]laintiffs effectively satisfied any valid billing requirement."  <u>Id.</u> at 1.

Alternatively, the plaintiffs bring their motion for reconsideration pursuant to Rule 60(b) based

on the same grounds on which Rule 59(e) relief is requested.  <u>See</u> Pls.' Mot. at 2.  The

"[d]efendant agrees that [the] [p]laintiffs' [m]otion raises a substantial issue requiring resolution

by this Court, and this Court wields discretion to decide that issue at this juncture." Def.s' Opp'n at 1.

As an initial matter, the Court must decide whether reconsideration is appropriate pursuant to Rule 59(e) or Rule 60(b). "A motion for reconsideration is generally treated as a [Rule] 59(e) motion if it is filed within [twenty-eight] days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." Middlebrooks v. Godwin Corp., 279 F.R.D. 8, 10 n.3 (D.D.C. 2011) (citing McManus v. District of Columbia, 545 F. Supp. 2d 129, 133 (D.D.C. 2008)). Because the plaintiffs filed their motion for reconsideration on October 25, 2018, see Pls.' Mot. at 1, within twenty-eight days of the entry of the Court's September 29, 2018 final decision, see Order at 1 (Sept. 29, 2018), ECF No. 49, the Court will treat the plaintiffs' motion as a Rule 59(e) motion only.

However, there is a question as to whether Rule 59(e) is the appropriate means for reconsidering its September 29, 2018 decision. Rule 59(e) "applies only to final judgments" of the Court. Shvartser v. Lekser, 330 F. Supp. 3d 356, 360 (D.D.C. 2018). Despite this limitation, the plaintiffs claim that the Court's prior decision "d[id] not resolve the bulk of the controversy . . . properly before th[e] Court." Pls.' Mot. at 11. And, as this Circuit has instructed, orders that "le[ave] the 'core dispute unresolved' . . . [are] not [ ] final order[s]." Limnia, Inc. v. U.S. Dep't of Energy, 857 F.3d 379, 385 (D.C. Cir. 2017) (quoting Am. Haw. Cruises v. Skinner, 893 F.2d 1400, 1403 (D.C. Cir. 1990); see id. at 383–85 (concluding that an order remanding a case to an administrative agency was not final because it "did not clarify what the parties were required to do on remand"). Thus, if the Court accepts the plaintiffs' position that its prior September 29, 2018 decision failed to resolve key issues, the Court could only reconsider its order pursuant to Rule 54(b). See Fed. R. Civ. P. 54(b) (permitting a court to "revise[] at any

time" an "order or other decision[] . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties"). However, it is not necessary for the Court to determine whether Rule 54(b) or Rule 59(e) applies because it concludes that the plaintiffs have satisfied "even the more stringent standards of Rule 59(e)." AARP v. U.S. Equal Emp. Opportunity Comm'n, 292 F. Supp. 3d 238, 241 n.1 (D.D.C. 2017) (despite observing that "[i]t [wa]s not entirely clear whether Rule 59(e) [wa]s, in fact, the correct vehicle for [a] motion" for reconsideration of an order remanding agency action, concluding that "the Court need not determine which Federal Rule govern[ed] [ ], because it f[ound] that [the movant] c[ould] meet even the more stringent standards of Rule 59(e)").

For the reasons explained in Part III.B of this Memorandum Opinion, infra, the Court disagrees with the plaintiffs that the Court committed "clear error" by "effectively finding [that the] [p]laintiffs are entitled to relief from [both components of] the must bill policy" but granting relief only as to the remittance advice requirement. Pls.' Mot. at 8; see Lardner v. Fed. Bureau of Investigation, 875 F. Supp. 2d 49, 53 (D.D.C. 2012) ("[F]inal judgment must be 'dead wrong' to constitute clear error."). Additionally, the Court cannot agree with the plaintiffs that any further delay in the resolution of this case caused by the Court's order remanding to the Secretary necessarily qualifies as "manifest injustice" to the plaintiffs. Messina v. Krakower, 439 F.3d 755, 758 (D.C. Cir. 2006); see Slate v. Am. Broad. Cos., 12 F. Supp. 3d 30, 35 (D.D.C. 2013) (observing that "manifest injustice is an exceptionally narrow concept in the context of a Rule 59(e) motion" and "does not result merely because a harm may go unremedied").

Nonetheless, the Court finds it appropriate to partially reconsider its September 29, 2018 decision pursuant to Rule 59(e). As the Court previously observed, "[I]t may be certain that the Administrator w[ill] again deny any claims he f[inds] h[ave] not been billed" and again find "that

the plaintiffs [do] not qualify for an exception to the billing requirement under the terms set forth in § 1102.3L." Mercy Gen. Hosp., 344 F. Supp. 3d at 353. And, if that happens, presumably the plaintiffs will "then seek judicial review of the Moratorium issue again," as well as raise the PRM § 1102.3L issue. Pls.' Mot. at 10. This sequence of events would result in piecemeal judicial review of these issues, as the several issues would have to be resolved by the courts on two separate occasions, which is generally disfavored. Cf. Osterneck v. Ernst & Whinney, 489 U.S. 169, 177 (1989) (treating "a postjudgment motion for discretionary prejudgment interest [a]s a Rule 59(e) motion . . . [to] further the important goal of avoiding piecemeal appellate review of judgments"). Moreover, it is notable that the defendant agrees with the plaintiffs that reconsideration of the Court's September 29, 2018 decision to address the billing requirement is appropriate. See Def.'s Opp'n at 6 ("The Secretary agrees that the Court should have [ ] analyzed the must-bill and remittance-advice policies." (emphasis added)). Additionally, although the parties rely on arguments that they have already raised in their summary judgment briefs and objections, this is not a case in which the parties seek to relitigate issues already decided by the Court, as the Court declined to decide the issues on which the plaintiffs now seek a ruling. Cf. SmartGene, Inc. v. Advanced Bio. Labs, SA, 915 F. Supp. 2d 69, 72 (D.D.C. 2013) (explaining that Rule 59(e) motions are "not simply an opportunity to reargue facts and theories upon which a court has already ruled"); cf. also Oceana, Inc. v. Evans, 389 F. Supp. 2d 4, 8 (D.D.C. 2005) (Rule 59(e) is "not intended to allow a second bite at the apple").

    For these reasons, the Court finds it appropriate to exercise its discretion and reconsider its September 29, 2018 decision based on the specific circumstances of this case. See AARP v. U.S. Equal Emp't Opportunity Comm'n, 292 F. Supp. 3d 238, 242 (D.D.C. 2017) (finding "good reasons to reexamine the Court's prior holding" remanding case to the agency but declining to

vacate an agency rule, including that "vacatur [i]s the usual remedy when an agency fails to provide a reasoned explanation for its regulations" and that the "Rule 59 motion [ ] allowed both parties to air their positions on the remedial question, thereby helping the Court to make a fully informed decision"); see also Judicial Watch, Inc. v. U.S. Dep't of State, 282 F. Supp. 3d 338, 344–45 (D.D.C. 2017) (considering an argument that the agency "fail[ed] to raise [a] [Freedom of Information Act] Exemption [ ] at the outset of the proceedings" because the failure "resulted from human error, because disclosure of the information [at issue] would [have] pose[d] a significant risk to national security, and because the agency ha[d] taken steps to ensure that it d[id] not make the same mistake again"). Accordingly, the Court will reconsider its September 29, 2018 decision in order to address the validity of the billing requirement and the Administrator's refusal to apply PRM § 1102.3L to the plaintiffs' claims.

**B.      Whether the Billing Requirement Violates the Moratorium**

The "[p]laintiffs ask this Court to hold that both components (billing and remittance advice) of the must bill policy violated the Moratorium." Pls.' Mot. at 2. They argue that "[t]he Court's reasoning [in its prior decision] that the remittance advice component of the must bill policy violates the Moratorium applies equally to the billing component, . . . [as] [t]he[] components are inextricably intertwined as part of the same must bill policy." Id. at 5. The Secretary responds that the must-bill policy "only demonstrates that the Administrator's decision must be affirmed[.]" Def.'s Opp'n at 6. The Secretary argues that "[a]lthough the Court found there was no express pre-[M]oratorium reference in the Secretary's guidance to a remittance-advice requirement, several courts have noted that the must-bill policy began long before the bad debt moratorium, and the Court should have reached that issue in its decision." Id. at 10 (citation omitted).

The Court agrees with the plaintiffs that the relevant PRM provisions do not constitute evidence of the billing requirement's existence prior to the Moratorium for some of the same reasons that they did not support a remittance advice requirement. As previously explained, "§ 310 of the PRM, which addresses the 'reasonable collection efforts' requirement for bad debt reimbursement under 42 C.F.R. § 413.89(e), provides that 'a reasonable collection effort . . . must involve the issuance of a bill on or shortly after discharge or death of the beneficiary to the party responsible for the patient's personal financial obligations.'" Mercy Gen. Hosp., 344 F. Supp. 3d at 338. However, "§ 312, read literally, exempts providers from complying with that section when seeking reimbursement for dual eligible patients."[6] Id. at 340; see PRM § 312 ("Once indigence is determined and the provider concludes that there ha[s] been no improvement in the beneficiary's financial condition, the debt may be deemed uncollectible without applying the § 310 procedures." (emphasis added)).

Additionally, PRM § 312.C's requirement that a "provider must determine that no source other than the patient would be legally responsible for the patient's medical bill," PRM § 312.C, does not constitute evidence of a billing requirement either. As previously explained, "the plain language of § 312 renders § 312.C literally inapplicable to Medicaid patients." Mercy Gen. Hosp., 344 F. Supp. 3d at 341 (internal quotation marks omitted). Moreover, § 312.C does not provide any instructions for how a provider should "determine that no source other than the patient would be legally responsible for the patient's medical bill," PRM § 312.C, let alone mandate that the only way to make such a determination is to bill the state, see Mercy Gen.

---

[6] As the Court previously explained in its September 29, 2018 decision, see Mercy Gen. Hosp., 344 F. Supp. 3d at 327–28, dual eligible patients are patients that "are eligible for both Medicare and Medicaid." Grossmont Hosp. Corp. v. Burwell, 797 F.3d 1079, 1081 (D.C. Cir. 2015). Although "Medicare is the primary payor" in the circumstances presented to the Court in this case, "[s]tate Medicaid plans often mandate that the state Medicaid agency pay for part or all of the Medicare deductibles and coinsurance amounts incurred in connection with treating these dual eligible[] [patients]." Id.

Hosp., 344 F. Supp. 3d at 341 ("[Section] 312.C . . . nowhere states that a provider must receive a remittance advice from a state Medicaid program in order to 'determine that no source other than the patient would be legally responsible for the patient's medical bill.'"). And, any insistence by the Administrator that billing the state is the only way to determine who is responsible for payment is undermined by the Secretary's adoption of PRM § 1102.3L, which provided other means of establishing responsibility for payment. See id.

Finally, PRM "§ 322 does not explicitly impose" a billing requirement. Id. at 342. Additionally, the Court again cannot agree with "the Administrator's conclusion that [PRM] § 322's reference to the amount that the State 'does not pay,' 'presumes that the State has been billed as all responsible parties are expected to be billed,'" id. (first quoting PRM § 322; then quoting AR at 8), however, for slightly different reasons. As the plaintiffs previously noted, the phrase "does not pay" could be "read to mean the amount that the State does not pay according to its State plan and [prescribed] rate schedule." Pls.' Summ. J. Mem. at 31. This reading finds support in the principle of statutory construction that "the present tense generally does not include the past." Carr v. United States, 560 U.S. 438, 448 (2010) (citing 1 U.S.C. § 1). Thus, the Court cannot conclude that the relevant PRM provisions constitute evidence of a billing requirement for providers seeking reimbursement for dual eligible patients.

Moreover, much of the remaining evidence cited by the Administrator as support for a billing requirement does not support the existence of that requirement prior to the Moratorium for the same reasons that it did not support the existence of a remittance advice requirement. As the Court previously recognized, "because neither [of the post-Moratorium] decision[s] w[ere] issued until long after August 1, 1987[,] . . . neither represents the Secretary's policy 'in effect' as of that date." Mercy Gen. Hosp., 344 F. Supp. 3d at 347. The Court applies the same logic to

JSM-370, a CMS memorandum which "was not issued until August 10, 2004," id. (citing AR at 1607), and various letters from intermediaries "dated in November or December of 1989," id. (citing AR at 604, 610, 612).

However, the Court cannot conclude that the pre-Moratorium Provider Reimbursement Review Board ("PRRB" or the "Board") decisions cited by the Administrator—Concourse Nursing Home v. Travelers Insurance Co., PRRB Dec. No. 83-D152 (Sept. 27, 1983); and St. Joseph Hospital v. Blue Cross & Blue Shield Ass'n, PRRB Dec. No. 84-D109 (Apr. 16, 1984)—do not support a billing requirement. The Court previously concluded that neither of these decisions supported a remittance advice requirement because "neither decision refers to a remittance advice or any other documentation of the state's response to a claim, let alone a requirement that providers must obtain from the state and submit such documentation in order to receive Medicare reimbursement." Mercy Gen. Hosp., 344 F. Supp. 3d at 344–45. However, the Court cannot reach the same conclusion with respect to the billing requirement because the Board's decision in St. Joseph Hospital explicitly requires at least an "attempt to bill." See AR at 1551 (denying bad debt reimbursement because "the provider did not attempt to bill the State of Georgia for its Medicaid patients"). Moreover, the Board's decision in Concourse Nursing Home, although it does not explicitly refer to any requirements to bill or attempt to bill, supports at least a requirement that providers make "actual collection efforts" before seeking reimbursement for bad debts. See AR at 1544 (denying bad debt reimbursement because the provider failed to "furnish[] [ ] documentation which would support its contentions that it had established collection policies and procedures or that actual collection efforts were made to obtain payments from the patients or the Medicaid authorities before an account balance was considered an uncollectible bad debt").

These two decisions, although not overwhelming evidence of the existence of a billing requirement prior to the Moratorium, constitute substantial evidence supporting the Administrator's conclusion. As this Circuit has instructed, the substantial evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support [an] agency's finding." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union v. Pension Ben. Guar. Corp., 707 F.3d 319, 325 (D.C. Cir. 2013). The Court must therefore conclude that these decisions represent "more than a scintilla" of evidence, which is all the substantial evidence standard requires. Fla. Gas Transmission Co. v. Fed. Energy Regulatory Comm'n, 604 F.3d 636, 645 (D.C. Cir. 2010).

The plaintiffs argue on numerous grounds that the two pre-Moratorium decisions cited by the Administrator provide inadequate evidence of the existence of a billing requirement prior to the Moratorium. However, the Court does not find any of these arguments persuasive. First, the plaintiffs argue that these decisions are irrelevant because "CMS administrative decisions do not and cannot set policy for the Secretary," Pls.' Reply Objs. at 9, as they "are [not] precedential and binding," Pls.' Summ. J. Mem. at 21 (quoting Marion Gen. Hosp. Provider v. Blue Cross & Blue Shield Ass'n, PRRB Dec. No. 2007-D8 (Feb. 12, 2007)). However, as the 1988 Conference Report regarding the Bad Debt Moratorium makes clear, the Secretary's "policy" includes the Secretary's "regulations, PRRB decisions, manuals, and issuances in effect prior to August 1, 1987." H.R. Rep. No. 100–1104, at 25 (1988) (Conf. Rep.), reprinted in 1988 U.S.C.C.A.N. 5048, 5337 (emphasis added); see also Cmty. Health Sys., Inc. v. Burwell, 113 F. Supp. 3d 197, 220 (D.D.C. 2015); Winder HMA LLC v. Burwell, 206 F. Supp. 3d 22, 37 (D.D.C. 2016) (explaining that "the Secretary's policy in 1987 included . . . [Board] decisions") (quoting Detroit Receiving Hosp. v. Shalala, No. 98-1429, 1999 WL 970277, at *11 (6th Cir.

Oct. 15, 1999)).  Therefore, regardless of whether Board decisions are binding on the Secretary

in other contexts, they are relevant to defining the Secretary's policy prior to the Moratorium,

because, as stated in the 1988 Conference Report, Board decisions become the policies of the

Secretary.  See Winder HMA, 206 F. Supp. 3d at 37 (rejecting the plaintiff's identical argument

because Board decisions "reveal the Secretary's bad-debt reimbursement policy prior to

August 1, 1987").

The plaintiffs next argue that the two pre-Moratorium decisions are distinguishable on

different grounds, including that they are "not bad debt decisions at all," Pls.' Objs. at 16,

because "Medicaid had sole and complete responsibility . . . for payment," id. at 15, and

"because . . . they were instances where Medicaid did have the responsibility to pay, very much

unlike in th[is] [ ] case," see id. at 16, where "the provider[s] [ ] determine[d] . . . that the State

[wa]s not the responsible payor," Pls.' Reply Objs. at 7.  First, the Court is perplexed by the

plaintiffs' argument that these decisions were "not bad debt decisions," Pls.' Objs. at 16, given

that the Board in each case applied the criteria for bad debt reimbursement under § 413.89(e) and

denied reimbursement for failure to satisfy those criteria, see AR at 1544, 1550–51.  Second,

neither of the decisions contains language compelling the Court to conclude that the requirement

that there be an "attempt to bill," AR at 1551, or to make "actual collection efforts," AR at 1544,

must be applied only to the specific factual circumstances presented.  In any event, even

assuming the plaintiffs' narrow reading of these decisions is plausible, their interpretation would

not give the Court license to question the Administrator's equally plausible interpretation that

they support at least a requirement to "attempt to bill," AR at 1551, as "the possibility of drawing

two inconsistent conclusions from the evidence does not prevent an administrative agency's

finding from being supported by substantial evidence," GCI Health Care Ctrs., Inc. v.

Thompson, 209 F. Supp. 2d 63, 73–74 (D.D.C. 2002) (quoting Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 619–20 (1966)).  Thus, the Court cannot agree with the plaintiffs that the two pre-Moratorium decisions are inadequate evidence of a billing requirement simply because they are factually distinguishable from this case.

Finally, the plaintiffs argue that the Administrator's position that the two Board decisions constitute evidence of a pre-Moratorium billing requirement "is illogical" because "neither . . . decision[] cite[s] to the purported must[-]bill policy . . . [or] to the PRM or any other policy guidance."  Pls.' Reply Objs. at 8.  To further explain their position, the plaintiffs analogize to a situation where "a district court issues a decision and reaches a certain result, with no citation to any authority whatsoever," asserting that such a "decision [cannot be] 'evidence' of a pre-existing rule of law from its Circuit Court of Appeals."  Pls.' Objs. at 15.  This analogy misses the point.  Although the two decisions do not explicitly cite a "must-bill policy" or all of the relevant PRM provisions, they do cite and apply the requirements of § 413.89(e), upon which the PRM provisions are based, see AR at 1544 (concluding that the provider's failure to make "actual collection efforts . . . to obtain payments from . . . the Medicaid authorities" precluded the provider from "consider[ing] [its claims] uncollectible"); see also AR at 1551 (concluding that the provider's failure to "attempt to bill the State . . . for its Medicaid patients" compelled the conclusion that its "collection efforts were not adequate"), and St. Joseph Hospital cites PRM § 310, see AR at 1550.  Therefore, the Board decisions cannot be fairly analogized to cases "with no citation to any authority whatsoever."  Pls.' Objs. at 15.  And, although the decisions do not explain exactly how the Board interpreted the relevant PRM provisions to support a billing requirement, the plaintiffs concede, as they must, that the PRM provisions do not foreclose a requirement to bill the state.  See Grossmont Hospital Corp. v. Burwell, 797 F.3d 1079, 1085

(D.C. Cir. 2015) (upholding as "sensible" the Secretary's interpretation of the bad debt regulation and § 310 to require that providers bill the state Medicaid program). Thus, it is not "illogical" to conclude that these two Board decisions constitute evidence that the Secretary interpreted § 413.89(e) and the relevant PRM provisions to require billing the state for debts associated with dual eligible patients.

Thus, the Court concludes that the Administrator's determination that the billing requirement does not violate the Bad Debt Moratorium is supported by substantial evidence. However, the Court must nonetheless affirm its previous decision to remand this case for the Administrator to evaluate whether the plaintiffs billed the state for the claims at issue. As the Court previously explained, the Administrator denied the plaintiffs' claims solely on the ground that the plaintiffs failed to satisfy the remittance advice requirement and "did not make any factual finding 'that the record [ ] supports a conclusion that the[] claims [at issue] . . . were not billed." Mercy Gen. Hosp., 344 F. Supp. 3d at 352 (quoting Grossmont Hosp. Corp., 797 F.3d at 1086). "To the contrary, the Administrator acknowledged that '[t]he p[laintiffs] testified [at the Board hearing] that they billed for some of the dual eligible patients.'" Id. (alterations in original) (quoting AR at 12 n.13). Nonetheless, the Secretary insists that the Court must affirm the Administrator's decision on the ground that the plaintiffs' failed to satisfy the billing requirement because "[t]he Court will look in vain at the 8,173-page Administrative Record for a single page reflecting an attempt to submit a bill." Def.s' Opp'n at 7–8. However, this is precisely the sort of task that the Court must leave to the Administrator. Cf. Seafarers Int'l Union of N. Am. v. Pena, 891 F. Supp. 641, 650 (D.D.C. 1995) (declining to address an issue not raised by the plaintiffs before the Maritime Administrator because the Court required his "expertise and development of a factual record . . . [to] enable[] proper judicial review").

**C.      Whether the Administrator Should Have Applied PRM § 1102.3L**

Because the Court concludes that the Administrator's finding that the billing requirement does not violate the Moratorium is supported by substantial evidence, and because the plaintiffs concede that they did not bill many, if not all, of the claims at issue, see Pls.' Resp. at 1, the Administrator likely will apply the billing requirement to reject many of the plaintiffs' claims on remand.  And, the plaintiffs will likely again argue that they satisfied the requirements for an exception to the billing requirement pursuant to PRM § 1102.3L.  Thus, to ensure the efficient resolution of this dispute, the Court finds it appropriate to review the Administrator's conclusion that § 1102.3L could not be applied to the plaintiffs' claims.

The plaintiffs "ask th[e] Court to hold that . . . PRM [§] 1102.3L applied to [them], and remand [this case] to the Secretary to determine within sixty days for which claims [the] [p]laintiffs' documentation sufficed under . . . [that provision]."  Pls.' Mot. at 2.

Even if the plaintiffs are correct that PRM § 1102.3L did not violate the Moratorium and therefore continued to apply to the plaintiffs' claims during the cost years at issue, the Court cannot conclude on the record before it that the Administrator erred in declining to apply this provision of the PRM to the plaintiffs' claims.  In addition to concluding that § 1102.3L violated the Bad Debt Moratorium, see AR at 16, the Administrator concluded that he could not apply the provision to the plaintiffs' claims because

> [§] 1102.3L needs to be read to require documentation reflecting 'data available from the [providers'] basic accounts, as usually maintained['] (42 C.F.R. [§] 413.26(a))[].   In this case, the [plaintiffs] have not maintained 'contemporaneous documentation in the ordinary course of business to support their claims[,]' which in fact, the State remittance advices represent.

AR at 16–17.

The Court previously concluded that this rationale could not support the Administrator's decision because the Administrator "appeared to take the position that only a remittance advice

could satisfy th[e] [contemporaneous documentation] requirement." <u>Mercy Gen. Hosp.</u>,

344 F. Supp. 3d at 353 n.21. The Court reasoned that "[b]ecause th[e] [Administrator's] position

effectively imposes a remittance advice requirement, which the Court has rejected, it also could

not provide a basis for the Administrator's denial of the claims on remand." <u>Id.</u> However, upon

further consideration of the Administrator's decision, the Court concludes that it is not clear that

the Administrator rejected the plaintiffs' documentation as not contemporaneous only because

the plaintiffs did not provide remittance advices, as the Administrator observed in his analysis of

§ 1102.3L that the plaintiffs' proffered documentation was "created many years after the cost

years at issue." AR at 17. Thus, the Court must revise its previous conclusion that "the

Administrator's decision does not purport to rely on [ ] reasons" other than a remittance advice

requirement in concluding that the plaintiffs failed to satisfy a contemporaneous documentation

requirement. <u>Mercy Gen. Hosp.</u>, 344 F. Supp. 3d at 353 n.21. Accordingly, the Court finds it

appropriate to further analyze the Administrator's application of the contemporaneous

documentation requirement as the basis for rejecting the plaintiffs' claims.[7]

The Administrator's determination that "[§] 1102.3L needs to be read to require

documentation reflecting 'data available from the [providers'] basic accounts, as usually

maintained['] (42 C.F.R. [§] 413.26(a))[,]" AR at 16, constitutes an interpretation of the

---

[7] The Court previously declined to address the contemporaneous requirement because the Administrator's decision did not purport to rely on those reasons, and therefore, the Court found that the Secretary's position constituted an impermissible post-hoc rationalization. <u>Mercy Gen. Hosp.</u>, 344 F. Supp. 3d at 353 n.21. Upon further consideration, however, the Court finds it appropriate to now consider the contemporaneous requirement. While the Secretary does not appear to directly respond to the plaintiffs' arguments regarding the contemporaneous requirement, the Court declines to treat these arguments as conceded. "Although courts have discretion to treat unanswered arguments as conceded, doing so is not a requirement." <u>Beach TV Props., Inc. v. Solomon</u>, 254 F. Supp. 3d 118, 130 n.3 (D.D.C. 2017) (first citing <u>Mason v. Geithner</u>, 811 F. Supp. 2d 128, 178 (D.D.C. 2011), <u>aff'd</u>, 492 F. App'x 122 (D.C. Cir. 2012), then citing <u>United States ex rel. Rockefeller v. Westinghouse Elec. Co.</u>, 274 F. Supp. 2d 10, 13 (D.D.C. 2003), <u>aff'd sub nom.</u> <u>Rockefeller ex rel. United States v. Wash. TRU Sols. LLC</u>, No. 03-7120, 2004 WL 180264 (D.C. Cir. Jan. 21, 2004)). Given the significance of the contemporaneous requirement to the Court's review of the Administrator's decision, the Court will consider these arguments.

Secretary's own regulations, specifically, an interpretation of 42 C.F.R. § 413.26(a), cf. Miller v. Cal. Speedway Corp., 536 F.3d 1020, 1028 (9th Cir. 2008) (concluding that "guidance provided in [a] technical assistance manual [wa]s an interpretation of [an agency's] regulation"). As the Supreme Court has recently instructed, courts must "defer[] to agencies' reasonable readings of genuinely ambiguous regulations." Kisor v. Wilkie, __ U.S. __, __, 139 S. Ct. 2400, 2408 (2019). The deference owed is "substantial," and "the agency's interpretation must be given 'controlling weight unless it is plainly erroneous or inconsistent with the regulation.'" Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)).

The regulations that § 1102.3L interprets are "genuinely ambiguous" because they do "not directly or clearly address [the] issue" presented here, Kisor, __ U.S. at __, 139 S. Ct. at 2410, specifically, the issue of whether 42 C.F.R. § 413.26(a)'s contemporaneous documentation requirement applies to § 1102.3L. Section 413.26(a) provides that "the methods of determining costs payable under Medicare involve making use of data available from the institution's basi[c] accounts, as usually maintained." 42 C.F.R. § 413.20(a).[8] This regulation purports to address the "principles of cost reimbursement . . . for proper determination of costs payable under the [Medicare] program," id., and does not specifically address bad debt reimbursement or other specific categories of reimbursement. However, the plaintiffs argue that § 413.26(a)'s reference to "costs payable" makes clear that § 413.26(a) does not apply to bad debt reimbursement because bad debts are not "costs payable," as § 413.89(a) provides that "[b]ad debts[] . . . are deductions from revenue and are not to be included in allowable cost." 42 C.F.R. § 413.89(a). However, § 413.89(d) also provides that "the costs attributable to the

_____

[8] The Administrator cited 42 C.F.R. 413.26(a), see AR at 16, but the language he quoted now appears in 42 C.F.R. § 413.20(a).

deductible and coinsurance amounts that remain unpaid [—i.e., bad debts—] are added to the

Medicare share of allowable costs." 42 C.F.R. § 413.89(d). In other words, bad debts are debts

that may ultimately be paid. Thus, the Secretary's interpretation of § 413.20(a) to apply to

reimbursement for bad debts is plausible given the regulation's focus on reimbursement

amounts. Additionally, 42 C.F.R. § 413.20 refers to the "cost reports" that "are required from

providers on an annual basis with reporting periods based on the provider's accounting year," id.,

and the plaintiffs concede that bad debts are included in cost reports or at least submitted with

cost reports as part of the overall reimbursement process, see Pls.' Summ. J. Mem. at 36

(referring to "total Medicare bad debts as recorded on the cost report"). Accordingly, § 413.20's

applicability to bad debt reimbursement is ambiguous.

      Although the plaintiffs are correct that § 413.20 does not contain the word

"contemporaneous," it does not follow that the regulation is not reasonably interpreted as

requiring contemporaneously-generated documentation to support requests for reimbursement of

bad debts. The Administrator concluded that "[a]s used in the context of the regulation . . . ,

'maintain' means that the provider is required to keep 'contemporaneous' records and

documentation throughout the cost year and to then make available those records to the

[intermediary] in order to settle the cost report in the normal course of business." AR at 15.

Interpreting "maintain" to require that documentation supporting bad debts, including a

determination of what amounts, if any, the State owes, be generated contemporaneously does not

appear unreasonable. The Ninth Circuit has also implicitly upheld this interpretation in

Community Hospital of Monterey Peninsula v. Thompson, 323 F.3d 782, 792–93 (9th Cir. 2003)

(upholding the Secretary's conclusion "that the must-bill policy was necessary in order to

generate contemporaneous documentation that could be 'maintained' in the usual course of the

provider's business as required by § 413.20(a)" as "a reasonable reading of the[] regulations"). And this Circuit did so, as well, albeit less explicitly and without referring to § 413.20. See Grossmont Hosp. Corp., 797 F.3d at 1086 ("conclud[ing] that an independent basis for affirming the Secretary's disallowance of [the provider]'s claims is the failure of [the provider] to timely bill Medi-Cal for those claims" (emphasis added)).[9] Additionally, for the reasons explained in the previous paragraph, the Secretary's interpretation is not inconsistent with § 413.89, and it is not apparent to the Court that the Secretary's interpretation is inconsistent with any applicable regulation. The Court must therefore defer to the Secretary's interpretation. See Shalala, 512 U.S. at 512.

The plaintiffs contend that any contemporaneous requirement is belied by "the nature of Medicaid eligibility determinations (which one obviously must have in order to claim bad debts for [ ] dual-eligible [patients])[, and which] is necessarily retrospective," Pls.' Objs. at 25 (citing Pls.' Summ. J. Mem. at 48–49), referring to their argument raised in the summary judgment briefing that "the idea that the [p]laintiffs were required to have billed the State and received remittance advices by the time they filed their cost reports is not only impossible to do but also inconsistent with CMS policy and practice," Pls.' Summ. J. Mem. at 49. Although it is true that an agency's "[s]udden and unexplained change, or change that does not take account of legitimate reliance on prior interpretation may be 'arbitrary, capricious [or] an abuse of discretion,'" Smiley v. Citibank, 517 U.S. 735, 742 (1996) (alteration in original), it does not appear that the plaintiffs have shown that any such change occurred here. The plaintiffs only claim that the Secretary has "allowed [providers] to submit supporting documentation . . .

---

[9] The plaintiffs do not appear to challenge the Administrator's conclusion that § 413.20 applies to documentation submitted pursuant to PRM § 1102.3L. See AR at 16 ("[S]ection 1102.3L needs to be read to require documentation reflecting 'data available from the Institution's basic accounts, as usually maintained" (citing language from § 413.20)).

following the filing of [a] cost report," Pls.' Summ. J. Mem. at 49; however, here, it appears that the plaintiffs did not submit any alternative documentation of the bad debts at issue until 2007 or thereafter. So, even if the Secretary's policy is what the plaintiffs claim it is, the Secretary's rejection of the plaintiffs' documentation in this case does not appear inconsistent with that policy.[10]

However, although the Court must defer to the Administrator's interpretation that the agency's regulations require contemporaneous documentation of bad debts for reimbursements, the Court cannot uphold the Administrator's conclusion that the plaintiffs' documentation failed to satisfy that requirement because it is not clear to the Court how the Administrator reached that conclusion. As the Court previously explained, the Administrator's decision could be construed as rejecting the plaintiffs' documentation as not contemporaneous simply because the documentation did not include remittance advices. See AR at 16–17. However, it could also be construed as the rejection of the plaintiffs' documentation because it was "created many years after the cost years at issue." AR at 18.[11] Thus, the Court concludes that it must remand this

---

[10] The plaintiffs also argue that it would be impossible to generate the contemporaneous documentation required based on the nature of cost reimbursement. Pls.' Summ. J. Mem. at 49. The plaintiffs appear to assume that "contemporaneous" necessarily means documentation created prior to or at the time cost reports are submitted. However, for the reasons explained earlier in this section, see Part C, infra, it is unclear from the Administrator's decision what the contours of contemporaneous documentation are. The Court therefore cannot respond to this argument before the remand in order for the Administrator to provide further explanation on what constitutes contemporaneous documentation. Additionally, the plaintiffs contend that their documentation was generated using bad debt lists that were contemporaneously maintained, and it is unclear whether the Administrator considered or should have considered this documentation. See Pls.' Objs. at 19; see also Pls.' Not. at 2–3. Therefore, the Court finds it inappropriate to consider this issue in the first instance. See Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."). Even if the Court thought it appropriate to decide whether this documentation was contemporaneous, because the Administrator did not explain what was meant by use of the term "contemporaneous," the Court cannot resolve that issue and remand is therefore necessary.

[11] The Court notes that there also exists some ambiguity about which of the plaintiffs' documentation constitutes the "alternative documentation" that the Administrator concluded was "created many years after the cost years at issue." AR at 18. Presumably, "alternative documentation" refers to the plaintiffs' EDS reports, as those reports are the

(continued . . .)

case for the Secretary to provide further explanation of its reasons for finding that the plaintiffs'

documentation was not contemporaneous as required by § 1102.3L.  See Fla. Power & Light Co.

v. Lorion, 470 U.S. 729, 744 (1985) ("If the record before the agency does not support the

agency action, if the agency has not considered all relevant factors, or if the reviewing court

simply cannot evaluate the challenged agency action on the basis of the record before it, the

proper course, except in rare circumstances, is to remand to the agency for additional

investigation or explanation.").[12]

## D.     Whether the Administrator Should Have Considered the Plaintiffs' EDS Reports

The plaintiffs also ask the Court to rule "on whether the EDS reports they submitted

effectively satisfied any valid requirement to bill the State and receive a remittance advice."

Pls.' Mot. at 10.  However, the Administrator's decision also suggests that he rejected the EDS

reports on the ground that "the EDS reports are not contemporaneously generated State

documents[] . . . [and] they were not validated, certified[,] or adopted as State documents and do

not qualify as State remittance advices."  AR at 18.  Nonetheless, as with the Administrator's

application of the contemporaneous documentation requirement in analyzing § 1102.3L, the

---

(. . . continued)
only documentation the Administrator discussed in his decision.  See AR at 17–18 & n.19 (as support for the
observation that the plaintiffs' documentation was created "long after the fact," noting that the plaintiffs did not
contract with "EDS . . . [until] May 14, 2007").  However, the plaintiffs insist that they submitted additional
documentation that the Administrator failed to consider.  See Pls.' Objs. at 19 (asserting that they made
"contemporaneous efforts to submit alternative documentation which began in 1992 and were continued upon the
release of [§] 1102.3L in 1995").  This issue represents another ambiguity in the Administrator's decision that the
Secretary must resolve on remand.

[12] The Court does not find it necessary to address the plaintiffs' arguments that the Secretary "could [not]
retroactively rescind [§] 1102.3L," Pls.' Objs. at 20, or that § 1102.3L was not "void ab initio for allegedly violating
the Moratorium," id. at 22–23, because a finding by the Administrator that the plaintiffs did not satisfy the
requirements of § 1102.3L, even if the provision were applicable, would possibly moot this issue.  Moreover, the
scope of the plaintiffs' challenge to the Administrator's decision to not apply § 1102.3L is not evident to the Court.
See Pls.' Resp. at 18 (in response to the Court's inquiry regarding whether the plaintiffs seek to argue that the
Secretary's rescission of § 1102.3L was arbitrary and capricious, responding only that the plaintiffs "have
challenged the refusal of the Secretary to apply it as being without legal authority" without citing the applicable
subsection of APA § 706).  For these reasons, the Court declines to decide these issues in the first instance.

Administrator's conclusion that the EDS reports do not satisfy the contemporaneous documentation requirement could be construed as considering that only a remittance advice would satisfy that requirement. Thus, the Court must remand to the Secretary for further explanation of the Administrator's conclusion that the EDS Reports fail to satisfy the contemporaneous documentation requirement.

## E.     Whether Retention of Jurisdiction Is Appropriate

Finally, the Court must address the plaintiffs' "request [that] th[e] Court order a strict schedule on remand and retain jurisdiction over this case." Pls.' Mot. at 2. Although district courts have "the discretion to retain jurisdiction over a case pending completion of a remand and to order the filing of progress reports[,] . . . this discretion is typically reserved for cases alleging unreasonable delay of agency action or failure to comply with a statutory deadline, or for cases involving a history of agency noncompliance." Am. Hosp. Ass'n v. Azar, Civ. Action No. 18-2084 (RC), 2019 WL 3037306, at *2 (D.D.C. July 10, 2019) (quoting Baystate Med. Ctr. v. Leavitt, 587 F. Supp. 2d 37, 41 (D.D.C. 2008)). Here, the plaintiffs have not alleged that the Secretary engaged in any such unreasonable delay or noncompliance, and the plaintiffs' conclusory assertion that, unless the Court retains jurisdiction, there is a "near certainty that the Secretary will [ ] leave the[ir] claims for reimbursement languishing for more years to come," Pls.' Reply at 3–4, is not persuasive. As another member of this Court has explained, "[t]he norm is to vacate agency action that is held to be arbitrary and capricious and remand for further proceedings consistent with the judicial decision, without retaining oversight over the remand proceedings." Baystate Med. Ctr., 587 F. Supp. 2d at 41. The plaintiffs have not provided the Court with a compelling reason to deviate from this norm.

Thus, the Court declines to exercise its discretion to retain jurisdiction over this case. Nonetheless, given that the plaintiffs' claims have now been pending for over ten years, <u>see</u> Pls.' Reply at 4 (noting that "the administrative appeal was filed more than ten years ago"), the Court urges the Secretary to resolve this matter as expeditiously as possible. <u>See</u> <u>Portland Cement Ass'n v. Envtl. Prot. Agency</u>, 665 F.3d 177, 194 (D.C. Cir. 2011) ("urg[ing] the [agency] to act expeditiously on remand" and observing that "any person may commence a civil action" in district court "to compel . . . agency action unreasonably delayed").

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that the Administrator's determination that the billing requirement does not violate the Bad Debt Moratorium is supported by substantial evidence. However, the Court must nonetheless affirm its prior decision to remand this case to the agency for the Administrator to evaluate whether the plaintiffs billed the state for the claims at issue. Additionally, the Court concludes that the Administrator's interpretation of 42 C.F.R. § 413.20 to require "contemporaneous" documentation of bad debts was not arbitrary or capricious. However, the Court must also nonetheless remand this case to the agency for the Administrator to provide further explanation of the reasons for finding that the plaintiffs' documentation was not contemporaneous as required by § 1102.3L. Moreover, this case is also remanded for further explanation of the Administrator's conclusion that the EDS Reports fail to satisfy the contemporaneous documentation requirement. Finally, the Court declines to exercise its discretion to retain jurisdiction over this case.

Accordingly, the Court grants in part and denies in part the plaintiffs' motion, and remands this case to the Secretary for further proceedings consistent with this Memorandum Opinion.[13]

  **SO ORDERED** this 17th day of October, 2019.

REGGIE B. WALTON
United States District Judge

---

[13] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.